# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| TRACEY WEINBERG, | ) |
| | ) |
| Plaintiff and | ) |
| Counterclaim Defendant, | ) |
| | ) |
| v. | ) C.A. No. 2021-1023-SG |
| | ) |
| WAYSTAR, INC., DERBY TOPCO, | ) |
| INC., DERBY TOPCO PARTNERSHIP | ) |
| LP, and DERBY GP, LLC, | ) |
| | ) |
| Defendants and | ) |
| Counterclaim Plaintiffs. | ) |
| | ) |

## MEMORANDUM OPINION

Date Submitted: April 29, 2022
Date Decided: July 6, 2022

Steven P. Wood, Andrew S. Dupre, and Travis J. Ferguson, of MCCARTER & ENGLISH, LLP, Wilmington, Delaware; OF COUNSEL: Julie B. Porter, of SALVATORE PRESCOTT PORTER & PORTER, Evanston, Illinois, *Attorneys for Plaintiff and Counterclaim Defendant*.

Kevin M. Gallagher and Caroline M. McDonough, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Sarah A. Zielinski and Amy Starinieri Gilbert, of MCGUIREWOODS LLP, Chicago, Illinois, *Attorneys for Defendants and Counterclaim Plaintiffs*.

**GLASSCOCK, Vice Chancellor**

I have been accused of a constitutional inability to write in clear and simple English.[1]  Per this case, the use in the preceding sentence of the conjunction "and" is an example.  This contractual litigation involves the same conjunction.  Its outcome is determined by an analysis of whether the "and" in question denotes options available to a party ("at our resort, you can swim, golf and play tennis") or prescribes rights only available if multiple conditions are met ("if you choose golf and get rained out, we will refund your greens fee").  That is, was "and" intended in its several, or its joint, sense?  This is the sole issue necessary to resolution of the matter at hand, and the parties have made cross-motions for judgment on the pleadings.

Bad—unclear—contractual drafting is not rare, in my experience.  Of course, as a judge, I see a skewed subset.  In any event, bad drafting keeps judges and lawyers gainfully employed.  Whether the contractual language here is an example is of no moment; the provision in question is clear (and unambiguous) read in context.  Here, the use of "and" is permissive and several; it describes a pair of periods when a call right may be exercised.  Since in context the language is not

---

[1] I offer no defense.  *See, e.g.*, *Manti Holdings, LLC v. Carlyle Grp. Inc.*, 2022 WL 1815759, at *13 (Del. Ch. June 3, 2022) (stating that "[u]nless [defendant] suffers from some financial Munchausen syndrome or from autoschadenfreude, I infer that the immediate and unfair [s]ale alleged worked a benefit—an enrichment—on [defendant]").

ambiguous, the cross-motions must be resolved accordingly: the Plaintiff's motion is denied; the Defendants' motion is granted. I explain below.

## I. BACKGROUND[2]

*A. The Parties*

Plaintiff Tracey Weinberg is the former Chief Marketing Officer of Defendant Waystar, Inc. ("Waystar"),[3] and a resident of Chicago, Illinois.[4]

Defendant Waystar is a Delaware corporation with its principal place of business in Louisville, Kentucky.[5]

Defendant Derby TopCo Partnership LP ("Derby LP") is a Delaware limited partnership with its principal place of business in Louisville, Kentucky.[6]

Defendant Derby TopCo, Inc. ("Derby Inc.") is a Delaware corporation with its principal place of business in Louisville, Kentucky.[7]

Defendant Derby GP, LLC is a Delaware limited liability company with its principal place of business in Louisville, Kentucky.[8] Derby LP, Derby Inc., and Derby GP, LLC are affiliates of Waystar.[9]

---

[2] I base the facts for this ruling on the parties' pleadings, together with the attachments thereto. The facts relevant to this Memorandum Opinion are undisputed.
[3] Verified Compl., Dkt. No. 1 ¶ 2 [hereinafter "Compl."].
[4] Defs.' Answer Affirmative Defenses Verified Compl. and Waystar, Inc., Derby TopCo, Inc., Derby TopCo Partnership LP, and Derby GP, LLC's Verified Countercl., Dkt. No. 19 ¶ 18 [hereinafter "Countercl."].
[5] *Id.* ¶ 13.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 16.
[8] *Id.* ¶ 17.
[9] *Id.* ¶ 14.

## B. *Waystar Grants Weinberg Options*

Waystar employed Weinberg from July 2018 to August 16, 2021.[10] During Weinberg's employment, Waystar granted her stock options in Derby Inc. pursuant to a Derby TopCo 2019 Stock Incentive Plan (the "Plan").[11] Weinberg was awarded three options grants under the Plan, pursuant to (i) a Substitute Option Agreement, dated October 22, 2019 (the "First Option Agreement"); (ii) an Option Agreement, dated October 23, 2019 (the "Second Option Agreement"); and (iii) an Option Agreement, dated August 9, 2020 (the "Third Option Agreement").[12] I refer to the First, Second and Third Option Agreements collectively as the "Option Agreements." The Option Agreements granted to Weinberg options to purchase shares of common stock in Derby Inc.[13] Once exercised, the Derby Inc. stock would automatically convert into economically equivalent partnership units in Derby LP (the "Converted Units").[14]

### 1. Waystar Terminates Weinberg

On August 16, 2021, Waystar terminated Weinberg's employment without cause.[15] As of that date, 89,318.96 of the options under the First Option Agreement had vested; 16,000 of the options under the Second Option Agreement had vested;

---

[10] *Id.* ¶ 19.
[11] Compl. ¶ 14.
[12] *Id.* ¶ 14.
[13] *See id.* ¶ 4; Countercl. ¶ 5.
[14] Compl. ¶¶ 4, 14, 27; Countercl. ¶¶ 5, 26.
[15] Compl. ¶ 23; Countercl. ¶ 22.

3

and 2,000 of the options under the Third Option Agreement had vested.[16] The remaining unvested options contemplated by the Option Agreements were automatically forfeited.[17] With respect to the vested options, the Option Agreements provided that Weinberg had 90 days from her termination date to exercise them.[18] On November 12, 2021, Weinberg elected to exercise her vested options, purchasing 107,318.96 shares of Derby Inc. common stock, which were immediately converted into Converted Units in Derby LP.[19]

### 2. The Defendants Purport to Repurchase the Converted Units and Weinberg Brings This Action

The Option Agreements each contained a "Call Right," which allowed the Defendants to repurchase Weinberg's Converted Units, according to the following terms:

> The Converted Units shall be subject to the right of repurchase (the "Call Right") exercisable by Parent, a member of the Sponsor Group, or one of their respective Affiliates, as determined by Parent in its sole discretion, during the six (6) month period following (x) the (i) the Termination of such Participant's employment with the Service Recipient for any reason (or, if later, the six (6) month anniversary of the date of the exercise of the [Substitute[20]] Options in respect of which the Option Stock was issued, and (y) a Restrictive Covenant Breach.

---

[16] Countercl. ¶¶ 23–25; *see also* Compl. ¶ 22.
[17] Countercl. ¶¶ 24–25.
[18] *Id.* ¶¶ 23–25.
[19] Countercl. ¶ 26; Compl. ¶¶ 25, 27.
[20] The Call Right provision in the First Option Agreement includes the word "Substitute," but it is otherwise identical to the Call Right provisions in the Second and Third Option Agreements.

The Call Right shall expire on the earlier of (i) an Initial Public Offering or (ii) a Change of Control.[21]

On approximately November 18, 2021, the Defendants exercised their Call Right with respect to all of Weinberg's Converted Units.[22]

Five days later, on November 23, 2021, the Plaintiff initiated this action, seeking, among other things, a declaratory judgment that the Defendants breached the Option Agreements by asserting the Call Right, and to enjoin the Defendants from asserting the Call Right.[23] On December 16, 2021, the parties stipulated that, while this action is pending, the Defendants shall retain the Converted Units and the Plaintiff shall retain the check for the funds paid by the Defendants.[24] The stipulation further provided that if judgment is entered in the Defendants' favor, the Call Right shall be deemed to have been exercised on November 18, 2021.[25] On December 17, 2021, the Defendants filed an answer, affirmative defenses, and a counterclaim, which seeks a reciprocal declaratory judgment that the Defendants appropriately exercised their Call Right under the Options Agreements.[26] The parties moved for judgment on the pleadings on January 28, 2022,[27] and completed

---

[21] Countercl., Ex. A ¶ 10(a); Ex. B ¶ 10(a); Ex. C ¶ 10(b).
[22] Countercl. ¶¶ 45–46; Compl. ¶¶ 29–30.
[23] Compl. at 11–13.
[24] Order Resolving Mot. TRO and Governing Further Proceedings, Dkt. No. 16 ¶¶ 1, 3.
[25] *Id.* ¶ 4.
[26] Countercl. at 42–43.
[27] Pl.'s Mot. J. Pleadings, Dkt. No. 24; Waystar, Inc., Derby TopCo, Inc., Derby TopCo Partnership LP, and Derby GP, LLC's Mot. J. Pleadings, Dkt. No. 26.

briefing on those motions on March 11, 2022.[28]  I held oral argument on April 20, 2022, and the parties submitted supplemental letters on April 29, 2022.[29]  I consider the matter fully submitted as of that date.

## II. ANALYSIS

### A. Legal Standards

The parties have cross-moved for judgment on the pleadings.  This Court will grant a motion for judgment on the pleadings "when there are no material issues of fact and the movant is entitled to judgment as a matter of law."[30]  On cross-motions for judgment on the pleadings, I must accept as true the non-prevailing party's well-pleaded factual allegations and make all reasonable inferences in that party's favor.[31]

"When analyzing a contract on a motion for judgment on the pleadings, this Court will grant such a motion only if the contract provisions at issue are unambiguous."[32]  Contracts are ambiguous "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more

---

[28] *See* Pl.'s Opening Br. Supp. Mot. J. Pleadings, Dkt. No. 25 [hereinafter "Pl.'s OB"]; Waystar, Inc., Derby TopCo, Inc., Derby TopCo Partnership LP, and Derby GP, LLC's Br. Supp. Mot. J. Pleadings, Dkt. No. 27 [hereinafter "Defs.' OB"]; Pl.'s Answering Br. Opp. Defs.' Mot. J. Pleadings, and Further Supp. Pl.'s Mot. J. Pleadings, Dkt. No. 36 [hereinafter "Pl.'s AB"]; Waystar, Inc., Derby TopCo, Inc., Derby TopCo Partnership LP, and Derby GP, LLC's Br. Opp. Tracey Weinberg's Mot. J. Pleadings, Dkt. No. 37.

[29] *See* Dkt. Nos. 43, 44.

[30] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499 (Del. Ch. 2000).

[31] *TravelCenters of Am. LLC v. Brog*, 2008 WL 5272861, at *2 (Del. Ch. Dec. 5, 2008).

[32] *Cooper Tire & Rubber Co. v. Apollo (Mauritius) Holdings Pvt. Ltd.*, 2013 WL 5787958, at *4 (Del. Ch. Oct. 25, 2013).

different meanings."[33] Ambiguity does not exist merely because the parties disagree about what the contract means.[34] When interpreting contracts, this Court "construe[s] them as a whole and give[s] effect to every provision if it is reasonably possible."[35] "A meaning inferred from a particular provision cannot control the agreement if that inference conflicts with the agreement's overall scheme."[36]

The parties here agree that there are no material factual disputes and that this matter can be resolved through a judgment on the pleadings based on the plain language of the Call Right provision.[37]

*B. Exercise of the Call Right Provision Does Not Require a Restrictive Covenant Breach.*

The parties dispute whether the Defendants' Call Right is available in the absence of a "Restrictive Covenant Breach" by Weinberg, which the parties agree has not occurred. The Call Right provision states, in relevant part,

> The Converted Units shall be subject to the right of repurchase (the "Call Right") exercisable by Parent, a member of the Sponsor Group, or one of their respective Affiliates, as determined by Parent in its sole discretion, during the six (6) month period following (x) the (i) the Termination of such Participant's employment with the Service Recipient for any reason . . . , and (y) a Restrictive Covenant Breach.[38]

---

[33] *Id.* (quoting *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007)).
[34] *Id.* (quoting *United Rentals*, 937 A.2d at 830).
[35] *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013).
[36] *Id.*
[37] *See* Oral Arg. re Cross-Mots. J. Pleadings Held Via Zoom at 25:8–16, 31:19–22.
[38] Countercl., Ex. A ¶ 10(a); Ex. B ¶ 10(a); Ex. C ¶ 10(b).

To state it even more succinctly:  the Defendants may exercise the Call Right " . . . during the six (6) month period . . . following . . . (x) . . . the Termination of such Participant's employment . . . for any reason . . . , and (y) a Restrictive Covenant Breach."

The Defendants contend that under this provision, they may exercise the Call Right during the six-month period following Weinberg's "Termination . . . for any reason," *and also* during the six-month period following a "Restrictive Covenant Breach."[39]

Weinberg argues that the Defendants' reading conflicts with the plain meaning of the conjunction "and" in the Call Right provision.[40]  According to Weinberg, the Defendants' interpretation would transform the conjunctive "and" into a disjunctive "or."[41]  Instead, Weinberg argues that the Defendants can only exercise the Call Right if she has been "Terminated . . . for any reason" *and* she has *also* committed "a Restrictive Covenant Breach."[42]  According to Weinberg, the "six (6) month period" only begins once both conditions have been satisfied.[43]  The parties agree that Weinberg was terminated without cause, and that the Defendants did not assert a "Restrictive Covenant Breach" when they exercised the Call Right.

---

[39] *See* Defs.' OB § I.A.
[40] *E.g.*, Pl.'s OB §§ I–II.
[41] *E.g.*, *id.*
[42] *Id.*
[43] Pl.'s AB § III.D.

Thus, under the Defendants' reading, the Call Right was timely exercised; under Weinberg's reading, it was not.

I find that the plain language of the Call Right provision supports the Defendants' interpretation because it is consistent with the "several" use of "and" that is used in permissive sentences.[44] As Professor F. Reed Dickerson, known as the "dean of American legislative drafting," observed in his article, *The Difficult Choice Between "And" and "Or,"* "it is not always clear whether the writer intends the several 'and' (A and B, jointly and severally) or the joint 'and' (A and B, jointly but not severally)."[45] Professor Dickerson explained that whether "and" is "several" or "joint" depends in part on whether it is used in a permissive or mandatory sentence.[46]

Professor Dickerson illustrated this principle using the following example: "charitable institutions and educational institutions."[47] "If the sentence is mandatory," Professor Dickerson explained, "you must have both kinds of institutions," so "'and' is joint rather than several."[48] But "[i]f the sentence is permissive, it is normally inferred that you may have one kind without the other,"

[44] *See Mason v. Range Res.-Appalachia LLC*, 120 F. Supp. 3d 425, 445 (W.D. Pa. 2015) ("When the word 'and' is used in a permissive sentence, it is likely to be used in its several sense.").

[45] F. Reed Dickerson, *The Difficult Choice Between "And" and "Or,"* 46 A.B.A. J. 310, 310 (1960).

[46] *Id.* at 312 ("[G]rammatical alternatives are conditioned by whether the enumeration is assumed to appear in a mandatory or permissive sentence.").

[47] *Id.* at 312–13.

[48] *Id.* at 312.

and therefore "'and' is several rather than joint."[49]  Professor Dickerson further explained that a writer intending "that the person covered by the statute is to be free to have either, neither, or both, [] may use any of these three sentences to express the idea":

> (A) 'He may contribute to charitable or educational institutions.'
>
> (B) 'He may contribute to charitable institutions and educational institutions.'  Here, 'and' is several, not joint.
>
> (C) 'He may contribute to charitable institutions or educational institutions.'  Here, 'or' is inclusive, not exclusive.[50]

Of the three options, Professor Dickerson recommended option (B)—using the "several" meaning of "and," which he asserted is least ambiguous.[51]  Notably, the only difference between sentences (B) and (C) is that one uses "and" and the other uses "or," illustrating that "'and' and 'or' produce the same result in such a context."[52]  Professor Dickerson noted that "this does not [mean] that 'and' means 'or,'" but rather, that "in such a context the two words are reciprocally related in that the implied meaning of one is the same as the expressed meaning of the other."[53]

---

[49] *Id.*
[50] *Id.* at 313.
[51] *Id.*
[52] *Id.*
[53] *Id.*

10

Professor Dickerson is not the only scholar to assert that the "several" meaning of "and" is commonplace. Indeed, Professor Bryan A. Garner agreed in his *Dictionary of Legal Usage* that "[t]he meaning of and is usually several."[54] Moreover, at least one court has agreed that "[w]hen the word 'and' is used in a permissive sentence, it is likely to be used in its several sense."[55]

Applying these principles to the Call Right provision supports Waystar's interpretation. The Call Right provision is permissive: Waystar may exercise it "in its sole discretion."[56] It is thus natural to read the word "and" in its "several" sense, to mean that Waystar can exercise the Call Right during "the six (6) month period" following Weinberg's "Termination . . . for any reason," during "the six (6) month period" following "a Restrictive Covenant Breach," or both. This comports not only with the sources referred to above; more importantly, it complies with a colloquial understanding of English as commonly used. "You can take a doughnut, a danish, and a bagel" invites, but does not mandate, gluttony.

This plain language reading of the Call Right provision is bolstered by a separate provision in the Second and Third Option Agreements that would be rendered meaningless if I were to adopt Weinberg's interpretation of the Call Right

---

[54] *See* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 639 (3d ed. 2011) (quoting SCOTT J. BURNHAM, THE CONTRACT DRAFTING GUIDEBOOK 163 (1992)).
[55] *See Mason*, 120 F. Supp. 3d at 445.
[56] Countercl., Ex. A ¶ 10(a); Ex. B ¶ 10(a); Ex. C ¶ 10(b).

provision. Specifically, Paragraph 10(b) of the Second Option Agreement and Paragraph 10(c) of the Third Option Agreement provide for different repurchase prices when the Defendants exercise their Call Right, depending on whether a "Forfeiture Event" has occurred (the "Repurchase Price Provision"):

> In the event the Call Right is exercised, the purchase price for the Converted Units subject to the exercised Call Right shall be the Fair Market Value (as defined in the Partnership Agreement) per unit on the closing date of the repurchase; provided that in the case of a Forfeiture Event, the purchase price for the Converted Units subject to the exercised Call Right shall be the lesser of (x) the per unit price paid by the Participant for the Converted Units, as adjusted to reflect any dividends or distributions paid in respect of such units and (y) the Fair Market Value (as defined in the Partnership Agreement) per unit on the closing date of the repurchase.[57]

In other words, the Second and Third Option Agreements provide for two repurchase prices—one where a "Forfeiture Event" has occurred, and one in the absence of a "Forfeiture Event."

The Second and Third Option Agreements define "Forfeiture Event" to include "the date of a Restrictive Covenant Breach":

> "Forfeiture Event" means (A) the date of the Participant's Termination for Cause (or voluntary resignation by the Participant at a time when the Board reasonably determines that the Employer could have terminated the Participant's employment for Cause) or (B) the date of a Restrictive Covenant Breach.[58]

---

[57] Countercl., Ex. B ¶ 10(b); Ex. C ¶ 10(c).
[58] Countercl., Ex. B ¶ 2(c)(iv); Ex. C ¶ 2(c)(iii).

Therefore, if Weinberg were correct that the Call Right exists only upon Termination *and* a Restrictive Covenant Breach, then the repurchase price applicable to Forfeiture Events would *always* apply. This interpretation would render the repurchase price that applies in the absence of a Forfeiture Event nugatory. In contrast, Waystar's interpretation of the Call Right provision can be reconciled with the Repurchase Price Provision: A Call Right exercised after Termination for cause or after a Restrictive Covenant Breach would be subject to the repurchase price applicable to Forfeiture Events, whereas a Call Right exercised after Termination without cause would be subject to the repurchase price applicable in the absence of a Forfeiture Event. This Court "will not read a contract to render a provision or term 'meaningless or illusory.'"[59] Only Waystar's interpretation of the Call Right provision preserves the meaning of the Repurchase Price Provision in the Second and Third Option Agreements.

I therefore find that Waystar was entitled to exercise the Call Right upon Weinberg's "Termination . . . for any reason," regardless of whether she committed a "Restrictive Covenant Breach."

---

[59] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010); *see also Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992).

*C. Weinberg's Affirmative Defenses Fail*

Weinberg asserts two affirmative defenses that she contends defeat judgment on the pleadings in the Defendants' favor. First, Weinberg contends that the Defendants cannot prove as a matter of law that they properly exercised the Call Right because Weinberg has not violated a restrictive covenant.[60] Second, Weinberg contends that the Option Agreements are contracts of adhesion, meaning that if the Call Right provision is ambiguous, it must be construed in Weinberg's favor.[61] But as I held above, the Call Right provision is unambiguous in context; it unambiguously allows the Defendants to exercise the Call Right so long as Weinberg was "Terminated" "for any reason," even if she did not commit "a Restrictive Covenant Breach." Weinberg does not dispute that she was "Terminated" from Waystar. Accordingly, neither of Weinberg's affirmative defenses precludes a judgment on the pleadings in the Defendants' favor.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Judgment on the Pleadings is GRANTED in its entirety. The Plaintiff's Motion for Judgment on the Pleadings is DENIED in its entirety. The parties should confer and submit a form of order consistent with this Memorandum Opinion.

---

[60] Pl.'s AB § IV.
[61] *Id.*

14